**BURLESON STATE BANK, Appellant,**

v.

**Burt PLUNKETT, et al., Appellees.**

**No. 10–98–036–CV.**

Court of Appeals of Texas, Waco.

Aug. 30, 2000.

Alan Wright, Haynes & Boone, L.L.P., Dallas, Bruce W. McGee, Gandy, McGee & Hall, P.C., Fort Worth, for appellant.

Kevin S. Marshall, Ming En Wang, Armando Sung Chiu, Marshall & Wang, Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

TOM GRAY, Justice.

Father and son filed suit against a bank alleging fraud, statutory fraud, breach of fiduciary duty, negligent misrepresentation, and violations of the DTPA in connection with a construction loan transaction. The jury found in favor of the father and son answering questions which support a judgment that the bank made affirmative misrepresentations regarding liability for a $60,000 loan. The trial court entered a

judgment based upon these answers. We are asked to review the jury's answers and the relevant law to determine the propriety of the judgment. We affirm in part and reverse in part.

### FACTS

In 1995, Burt and Donna Plunkett bought a house in Arlington and planned to move it to their property in Johnson County. The Plunketts hired Byron Moss (doing business as B & B Construction) to make improvements to the house after it had been moved. Byron and the Plunketts discussed financing for the project, during which Byron suggested that the Plunketts contact Madie Allen at Burleson State Bank (Burleson). Allen had helped Byron in the past with financing for the construction of eight "spec" homes. Byron's father, Frank Moss, cosigned Byron's notes to Burleson in each instance and Byron repaid the notes after he sold the homes.

According to the evidence presented by Byron and Frank, throughout the pendency of the construction project, Burleson represented to Byron, Frank and the Plunketts that the Plunketts were the borrowers responsible for payment of the $60,000 construction loan. Only after learning from Byron that the Plunketts would need to borrow additional funds to complete the repair and remodeling of the house, were the Plunketts advised by Burleson that they were not the borrowers. Burleson at that time also advised Byron that he was the actual borrower responsible for the repayment of the loan. Ultimately, Burleson demanded that Byron and/or his father, Frank, repay the construction loan. To aid in collection of the loan, Burleson placed a hold on the deposits of Mrs. Billie Moss, Frank's spouse, until Burleson received repayment

of the loan. Eventually, Frank paid the principal and other charges on the loan.

The Plunketts became upset and suspicious with respect to the entire transaction and sued Burleson, Frank, Byron and Kevin Moss[1] alleging a conspiracy between Burleson and Byron. Upon receipt of the Plunkett Original Petition, Burleson then sued Byron, Frank, and Kevin Moss, requiring that they indemnify Burleson for any loss whatsoever resulting from the Plunkett's lawsuit.

Shortly before the August 1997 trial setting, the Mosses settled with the Plunketts and the Plunketts filed a nonsuit with respect to their claims against Frank, Byron and Kevin Moss. As a result of the settlement, Byron and Frank were realigned as plaintiffs leaving Burleson as the only defendant. Even though Frank and Byron admitted signing the $60,000 note, they testified that it was not their loan and that they never intended to be responsible for its repayment. After all parties closed, the Plunketts and Burleson settled, and Burleson nonsuited its claims against Byron and Frank. Therefore, only Byron's and Frank's claims against Burleson were submitted to the jury.

The jury found in favor of Byron on his claims for common law fraud, statutory fraud, breach of fiduciary duty, negligent misrepresentation, and violation of the DTPA, and in favor of Frank with respect to his claims for statutory fraud and breach of fiduciary duty. The trial court signed a judgment awarding Byron $106,500 ($12,500 in actual damages, $50,000 in exemplary damages, and $44,500 in attorneys fees) and Frank $420,000 ($100,000 in actual damages, $300,000 in exemplary damages and $20,000 in attorneys fees). Burleson now

---

1. Kevin Moss is Byron's brother who had no actual involvement in the transaction in question other than his name being listed on the business card for B & B Construction. The style of the case as ordered by the court in response to a motion to realign did not mention Kevin. He was not mentioned in any subsequently filed document. He was not mentioned in the judgment. On appeal the parties have not contested the trial court's order or judgment with regards to Kevin.

brings thirty-four issues for our review in this appeal.

### STATUTORY FRAUD— § 27.01
### (FRANK AND BYRON)

■ In issues one and two, Burleson argues that the trial court erred in rendering judgment in favor of Byron and Frank based on their claims under section 27.01 because this section is inapplicable to the construction loan transaction. TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 1987). Section 27.01 provides for a statutory cause of action for fraud in real estate and stock transactions. The elements of statutory fraud under this section are essentially identical to the elements of common law fraud except that 27.01 does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages. *See Brush v. Reata Oil and Gas Corp.*, 984 S.W.2d 720, 726 (Tex.App.— Waco 1998, writ denied).

Section 27.01 only applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock. A loan transaction, even if secured by land, is not considered to come under the statute. *Cf. Greenway Bank & Trust v. Smith*, 679 S.W.2d 592, 596 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Because there was neither a contract for, nor a sale of, land or stock between the parties involved in this case, § 27.01 does not apply. Accordingly, the trial court erred in rendering judgment in favor of Byron and Frank based on their claims under § 27.01. Issues one and two are sustained. Because we have sustained issues one and two we need not address issues three and four.

### BREACH OF FIDUCIARY DUTY (FRANK)

■ In issue five, Burleson argues that Frank is precluded from recovery on his breach of fiduciary duty claim as a matter of law because there was no fiduciary or special relationship between him and Burleson. An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely a personal one. *See Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex.1997); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962). But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *See Schlumberger*, 959 S.W.2d at 171; *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992). Outside the cases in which formal fiduciary duties arise as a matter of law, confidential relationships may arise when one party has dealt with another in a certain manner for a long period of time such that one party is justified in expecting the other to act in its best interest. *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). However, in order to give full force to contracts, we do not create such a relationship lightly. *See Thigpen*, 363 S.W.2d at 253. Thus, while a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex.1995).

We recognize that Frank testified that they trusted and relied on Burleson to structure a construction loan in which the Plunketts would be liable. "However, mere subjective trust does not transform arm's-length dealing into a fiduciary relationship." *See Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex.1997); *Crim Truck*, 823 S.W.2d at 595. In this case, there is no evidence on which to base any confidential or fiduciary relationship having been created between Frank Moss and Burleson. There were no substantive dealings between Frank and Burleson, beyond that of cosigning Byron's loans, that would justify such a special relationship of trust and confidence. Accordingly, Frank cannot recover for breach

of fiduciary duty. Issue five is sustained. Because issue five is sustained we need not discuss issues six and seven.

### COMMON LAW FRAUD (BYRON)

In issue eight, Burleson argues that they did not owe Byron a duty beyond the contractual obligations evidenced by the loan documents because "[a] jury may not restructure or recast promissory notes or other contracts to satisfy their sense of justice contrary to the written agreement of the parties." *Commercial Nat'l Bank of Beeville v. Batchelor*, 980 S.W.2d 750 (Tex.App.—Corpus Christi 1998, no writ). Thus, Burleson contends Byron's common law fraud claim fails as a matter of law. We disagree. "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex.1998). "[I]t is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *See Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 239 (1957) ("[T]he law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it."). Accordingly, issue eight is overruled.

In issue nine, Burleson argues that the evidence is legally and factually insufficient to support the award of actual damages to Byron in the amount of $12,500. "In reviewing a legal sufficiency challenge, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998).[2] We will uphold the

finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Id.; Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). In reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

To prevail on a common-law fraud claim, a plaintiff must establish (1) the defendant made a material representation, (2) the representation was false, (3) the defendant either knew the representation was false when made or made it recklessly without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that it be acted upon, (5) the representation was in fact relied upon, and (6) damage to the plaintiff resulted. *See Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990) (op. on reh'g), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983).

We will review all the evidence and summarize it for each of the elements of fraud. At trial, the evidence was disputed. Burleson adamantly contended they fully disclosed the nature of loan transactions and that it was clear Byron knew he was signing a loan agreement for which he was

---

2. We have used the more recently expressed standard for a legal sufficiency review. The result would be the same under the alternative statement of the standard—considering only the evidence and inferences that tend to support the finding and disregarding all evidence and inferences to the contrary. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965) and its progeny.

liable and Frank was the guarantor. Nevertheless, the jury rejected this evidence.

*Factors and Facts*

*(1) Material Misrepresentation*

■ A representation is "material" if it is important to the party to whom it is made in making a decision regarding the particular transaction. *See Beneficial Personnel Serv. v. Porras*, 927 S.W.2d 177, 186 (Tex.App.—El Paso 1996), *vacated and remanded by agreement*, 938 S.W.2d 716 (Tex.1997). "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Id.* ( *quoting American Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex.App.—Houston [14th Dist.] 1991, no writ)).

In the case at bar, the evidence supports a finding that Burleson made material misrepresentations to Frank and Byron regarding the structure of the loan and the extent of their liability for the construction loan. Byron testified that the loan officer told him that his signature was a mere formality for the Plunkett loan. No one explained to him or his father that they were liable for the loan instead of the Plunketts. Even the Plunketts testified that Burleson represented to them that they were responsible for the loan and not Byron or Frank.

*(2) False*

■ To establish fraud, the material representation must be false when it is made. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). Here, the very documents that set out the loan transaction between Frank and Byron and Burleson belie the statements made by Burleson employees that the Plunketts would be responsible for the note. Burleson never attempted to dispel the impression regarding the Plunkett's liability until the note was due. This evidence supports the jury's finding that Burleson's employee's assertions that Frank and Byron were not responsible for payment of the note and that the Plunketts were responsible for the note was false when made.

*(3) Knowledge of falsity or reckless*

■ A statement is not fraudulent unless the speaker knew it was false when made or the speaker made it recklessly without knowledge of its truth. *Prudential Ins. Co. v. Jefferson Assocs.*, 896 S.W.2d 156, 163 (Tex.1995); *Brush*, 984 S.W.2d at 726. Proof that a defendant made a statement knowing of its falsity or without knowledge of its truth may be proved by direct or circumstantial evidence. *See Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526 (Tex.1998); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

The evidence shows that Burleson's employees knew that Frank and Byron would be held responsible for the loan. Alternatively, the jury could have reasonably concluded that the Burleson employees did not understand the consequences of the way they structured the loan, and therefore acted recklessly in misinforming the Plunketts and the Mosses regarding their respective liability and that Burleson had any intentions of giving the Plunketts the loan. The finding on this element of fraud is supported by the evidence.

*(4) Intent*

■ The defendant must intend its false representation to induce action. *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281 (Tex.1994). While a party's intent is determined at the time the party made the representation, it may also be inferred from subsequent acts. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). Most importantly, at the time the documents were executed, Burleson represented to Byron that his signature was a mere formality and that they never explained to Frank, Byron, or the Plunketts that Frank and Byron were liable for the loan. The subsequent acts in

this case include the fact that Burleson never gave Frank or Byron copies of the documents that they were required to sign, even when they were requested. Furthermore, Burleson did not inform Frank or Byron that they were liable for the loan until the loan matured. The evidence of intent is sufficient to sustain the jury verdict.

### (5) Reliance

As the plaintiff, Byron was required to demonstrate that he relied upon the fraudulent misrepresentation to his detriment. *Trenholm,* 646 S.W.2d at 933. Byron testified that he and his father had relied upon Burleson's representations that their signatures were mere formalities for the Plunkett loan. He also testified that he had relied upon Burleson's explanations of the documents he signed in eight previous transactions, and that he had no reason to suspect that Burleson would commit fraud in this transaction. Furthermore, there was testimony that Byron and his father were told that Burleson would take care of him and that he had nothing to worry about. Reliance was established.

### (6) Injury

Finally, Byron bore the burden of establishing injury resulting from Burleson's misrepresentations. This he did by showing that he suffered damage to his relationship with his family, especially his father. He also proved that he had suffered mental anguish damages as a result of Burleson's misrepresentations. (The sufficiency of this evidence will be discussed at length later). He also testified he had not been able to build another house since this incident. Furthermore, he proved that he was forced to borrow the money from his family to repay the loan in question. Injury was established.

After reviewing all of the evidence presented by both sides, we conclude that there is more than a scintilla of evidence supporting the jury's finding of common law fraud. Additionally, we cannot say that the jury's finding is supported by evidence so weak, or so overwhelmed by contrary evidence, as to make the verdict manifestly unjust. Accordingly, we overrule issue nine.

We decline to address issue ten because Burleson did not adequately brief this argument on appeal. Accordingly, we overrule issue ten.

### DECEPTIVE TRADE PRACTICES ACT (BYRON)

■ In issue thirteen, Burleson contends that the trial court erred because Byron is not entitled to recover under the DTPA as a matter of law because he was not a "consumer." To establish DTPA "consumer" status, two requirements must be proven: (1) a person must have sought or acquired, goods or services, by purchase or lease; and (2) the goods or services, purchased or leased, must form the basis of the complaint. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex. 1987); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981). "If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress." *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981).

Burleson argues that Byron is not a "consumer" because he did not seek or acquire goods or services by purchase or lease. *See* TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). The core of this argument is that a loan of money is neither a good nor a service; consequently, a pure loan transaction lies outside the DTPA. *See Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). However, there are other bank customer cases that have been decided since *Riverside* in which borrowers have qualified as consumers if the money was sought to acquire a good or service. For example, in *Knight,* the person's objective was the purchase of a dump truck. *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382 (Tex.1982). In *Flenniken,* the bank agreed to provide in-

terim financing for a house. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex.1983). The Supreme Court held that, viewed from the purchaser's perspective, the person "did not seek to borrow money; they sought to acquire a house." *Id.* at 708. In neither case, however, was *Riverside* expressly overruled.

Byron mainly relies upon *Herndon* to support his claim that Burleson's ancillary banking services constituted "services" for the purpose of the DTPA. *Herndon v. First Nat'l Bank*, 802 S.W.2d 396 (Tex. App.—Amarillo, 1991, writ denied). In *Herndon*, the borrower claimed that he sought to acquire from the lender a variety of financial services. These services included financial advice on when and where to obtain financing, whether to abstain from borrowing, and how to structure various financial agreements of his business operations. The court held that the bank's financial advice constituted services for purposes of the DTPA.

Financial advice on when to borrow, whether to borrow, and how to structure financial arrangements of business operations is not typically incidental to the loan itself. This financial advice constitutes an objective independent of the loan transaction. However, in this case, the end and aim of Byron's interaction with Burleson was to assist the Plunketts in obtaining a construction loan. The only thing sought by purchase or lease was the loan of money. Burleson's ancillary services served no purpose apart from facilitating the construction loan. Therefore, we conclude that any services provided by Burleson were incidental to the loan and not an independent objective of the transaction. As such, Byron was not a consumer for purposes of the DTPA. Therefore, we sustain appellant's thirteenth issue. Because we sustained this issue, we need not address issues fourteen, fifteen, sixteen, seventeen, and eighteen.

### NOTICE OF FINAL AGREEMENT
### (FRANK AND BYRON)

■ In issue nineteen, Burleson argues that a document entitled the "notice of final agreement" bars any claims that Byron or Frank may have based on alleged duties outside the four corners of the loan documents. Section 26.02(e) of the Code requires that written loan agreements involving more than $50,000 contain a "merger" clause. TEX. BUS. & COM.CODE ANN. § 26.02(e) (West Supp.1996). The "notice of final agreement," which all parties signed, contained the merger clause suggested in the statute. Burleson relies upon this language:

> The written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

*Id.* Moreover, Burleson contends that Byron's and Frank's signatures acknowledged, represented, and warranted to Burleson that they received, read and understood the notice of final agreement. Thus, Burleson contends that the notice of final agreement precludes any recovery based on the misrepresentations allegedly relied upon by Byron and Frank which were not included in the loan documents.

■ The reason for placing a "notice of final agreement" or merger clause in a written contract is to invoke the parol evidence rule which excludes proof of extrinsic agreements. *Maginn v. Norwest Mortgage, Inc.*, 919 S.W.2d 164, 168 (Tex. App.—Austin 1996, no writ) ("Examining the statute as a whole, we conclude that the penalty for failing to comply with § 26.02(e) is to allow the written contract to be controverted by parol evidence."). However, "the parol evidence rule was never intended to exclude proof of and investigations about fraud, whatever class of fraud it might be." *Schlumberger*, 959 S.W.2d at 179; *Roy Klossner Co. v. McIntire*, 301 S.W.2d 197, 200 (Tex.Civ.App.—San Antonio 1957). As the court in *Roy* states:

The right and the remedy are summarized by Section 573, Restatement of Contracts, which states that a provision in a bargain that fraud in its formations shall not be asserted is an illegal clause. The Restatement further states that when there are, in fact, fraudulent representations not contained in the writing, and they induced its formation, that an action for deceit may be maintained. *Id.* at 201; See RESTATEMENT OF CONTRACTS, § 573. Moreover, it follows that fraud, if admissible to vitiate a contract in its entirety, should also operate to vitiate the disclaiming clause, since the clause is but a part of the contract. *Id.; Comment,* 27 TEXAS L REV. 361, 366.

 The Texas Supreme Court has held that "as a matter of policy, a merger clause can be avoided based on fraud in the inducement and that the parol evidence rule does not bar proof of such fraud." *Dallas Farm Machinery Co. v. Reaves,* 158 Tex. 1, 307 S.W.2d 233 (1957). In *Dallas Farm Machinery,* the court adopted the following rule from Elliott on Contracts, Vol. 1, Sec. 70:

> If one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the agreement, such that if he had known the truth he would not have given his assent, the contract may be avoided by him. There can be no real assent when it is induced by fraud.

*Id.* at 240. In doing so, the Court brought Texas law on the subject into harmony with the rule of the Restatement of the Law of Contracts. More recently, the Court has emphasized that a merger clause will not always bar a fraudulent inducement claim. *See Schlumberger,* 959 S.W.2d at 179. However, the Court did note the competing concern with this policy-the ability of parties to bargain for and execute a release barring further dispute. Therefore, courts must review the contract and the circumstances surrounding its for-

mation in determining whether a merger clause is binding. *Id.* at 179.

It is clear from the jury's verdict that they believed Byron's and Frank's testimony that they were fraudulently induced to sign the loan documents. After reviewing the documents and the circumstances of this case, we conclude that the jury could properly disregard the notice of final agreement as having been induced by fraud. Byron's and Frank's testimony at trial was that Burleson misrepresented the effect of their signatures on the loan documents stating that they were mere formalities and that they only signed the note because they believed the representations of the bank officers that the Plunketts were the borrowers. Accordingly, we conclude that the "notice of final agreement" is not binding and neither prevents nor limits Frank or Byron from exercising their rights to pursue their respective tort claims. Issue nineteen is overruled.

### NEGLIGENT MISREPRESENTATION (BYRON)

 In issue eleven, Burleson argues that Byron is precluded as a matter of law from recovery on his negligent misrepresentation claim because the "notice of final agreement" makes clear that there are no other duties or agreements outside those outlined in the contract, thus negating the element of reliance. However, we conclude that on this record, the notice of final agreement did not conclusively negate as a matter of law the element of reliance on the Bank's misrepresentations regarding the loan transaction. Byron did not unequivocally disclaim reliance upon the representations made by Burleson's employees regarding liability for the construction loan. Accordingly, the "notice of final agreement" or merger clause does not preclude Byron's recovery for negligent misrepresentation.

 In issue twelve, Burleson contends that the evidence is legally and factually insufficient to support a judgment for Byron on the negligent misrepresenta-

tion claim. The elements of a cause of action for negligent misrepresentation are as follows: (1) a representation is made by the defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the defendant's misrepresentation. *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

In the case at bar, the representations were made by bank employees to Byron that he was not responsible for the repayment of the $60,000 note. These false representations were given to Byron Moss in connection with his construction business. There was ample evidence that Burleson did not exercise reasonable care or competence by failing to advise the Mosses of the consequences of their signatures on several loan documents. To his detriment, Byron relied upon the misrepresentations made by Burleson and suffered pecuniary losses due to his repayment of the note. Accordingly, Burleson is liable for its negligent misrepresentations to the Byron. Issues eleven and twelve are overruled.

### *Actual Damages—Mental Anguish (Byron)*

In issue twenty-three, Burleson attacks on several grounds the jury's award of $10,000 for mental anguish damages as an element of Byron's actual damages of $12,500. Burleson contends that (1) the evidence is legally and factually insufficient to support the jury's award, (2) that Burleson did not proximately cause Byron's alleged damages, and (3) that the $10,000 award for mental anguish damages is excessive.

■■■ We have been instructed to "closely scrutinize" awards of mental anguish damages. *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860 (Tex.1999).

An award of mental anguish damages requires either "direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). There must also be evidence that the mental anguish damages awarded is fair and reasonable compensation. *Saenz*, 925 S.W.2d at 614.

In assessing a claim that the damages found are excessive, the appellate court performs a sufficiency review. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.1998); *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 847–48 (Tex.1990). As long as there is some direct evidence of a "substantial disruption in the plaintiffs' daily routine," we will not overturn the jury's verdict. *See generally Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995) (some proof of substantial disruption necessary to support jury finding of mental anguish).

■■■ Byron testified that he was unable to sleep, averaging only four to five hours a night. He stated that he suffered from headaches, diarrhea, vomiting, and depression. Furthermore, Byron testified that the strain had affected his work and that he had not been able to build any more houses since this incident. Overall, we believe that this testimony supports the jury's conclusions that Byron had suffered "a high degree of mental pain and distress" which caused a serious disruption in his daily routine. *Parkway*, 901 S.W.2d 434.

While this evidence supports a finding that Byron suffered mental anguish, the record also shows that the award of $10,000 is fair and reasonable compensation for that anguish. *Id.* We find that the

evidence is legally and factually sufficient to support the award of mental anguish damages because it addresses the nature and severity of the mental pain and distress Byron suffered over an extended period. Issue twenty-three is overruled.

### ACTUAL DAMAGES—REMITTITUR (BYRON)

In issue thirty-three, Burleson argues that this Court should order a remittitur because the evidence is factually insufficient to support the damage awards. The standard of review for suggestions of remittitur or claims of excessive damages is succinctly set forth in *Pope:* "Factual sufficiency is the sole remittitur standard for actual damages. In determining whether damages are excessive, trial courts and courts of appeals should employ the same test as for any factual insufficiency question." *See Larson v. Cactus Utility Co.,* 730 S.W.2d 640 (Tex.1987); *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986). After a complete review of the Byron's actual damage testimony in this record, we conclude there is ample evidence from which the jury could determine actual damages of $12,500. Issue thirty-three is overruled.

### ATTORNEY'S FEES (FRANK AND BYRON)

Attorney's fees are not recoverable unless such a recovery is provided by statute or a contract between the parties. *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 592 (Tex.1996) (orig.proceeding). Based on the parties' stipulation as to the amount of reasonable and necessary attorneys' fees, the trial court awarded Frank $20,000 and Byron $44,500 in attorneys' fees. Of the five theories Byron submitted to the jury (statutory fraud, breach of fiduciary duty, common law fraud, negligent misrepresentations, and DTPA), only his statutory fraud claim or the DTPA claim could support an award of attorneys' fees. Of the two theories Frank submitted to the jury, only his statutory fraud claim could support an award of attorneys' fees. As discussed above, neither Byron nor Frank can recover for statutory fraud. Nor can Byron recover under the DTPA. Thus, neither Frank or Byron recovered on a theory that supports an award of attorneys' fees. As a result, we reverse the award of attorneys' fees to Byron and Frank and render judgment that they take nothing on their claims for attorneys' fees. Issue thirty-two is sustained.

### PUNITIVE DAMAGES (FRANK AND BYRON)

In issue twenty five, Burleson contends that neither Frank nor Byron are entitled to recover punitive damages when no actual damages are recoverable. An award of actual damages is necessary to support an award of punitive damages. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 667 (Tex.1990). Therefore, because Byron is entitled to recover actual damages, an award of punitive damages may be adequately supported. However, because Frank cannot establish that he is entitled to recover actual damages, the award of punitive damages to him must be reversed. Issue twenty-five is affirmed in part and reversed in part. Accordingly, we need not address issue thirty.

In issues twenty-six and twenty-seven, Burleson argues that the evidence is legally and factually insufficient to support the finding of malice necessary to award exemplary damages. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon 1997). To recover exemplary damages based upon a finding of common law fraud, Byron must also establish that Burleson acted with malice. *See Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943); *Fletcher v. Edwards,* 26 S.W.3d 66, 79 (Tex.App.—Waco 2000). "Malice may be inferred from a wrongful act done intentionally in violation of [a party's] rights." *Accent Bldrs. Co. v. Southwest Concrete Sys., Inc.,* 679 S.W.2d 106, 111 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

The jury charge asked whether, by clear and convincing evidence, Burleson acted with malice against Byron Moss and defined *malice* as:

a) a specific intent by the Bank to cause substantial injury to Byron Moss, or

b) an act or omission:

1) which, when viewed objectively from the standpoint of the actor at the time of this occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and

2) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*See id.* § 41.001(7). Burleson did not object to the submitted definition. The jury found that Burleson had acted maliciously and assessed exemplary damages against it. While the jury's findings indicate that it considered Burleson's actions to be unlawful or wrongful, "the fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages." *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 454 (Tex.1996). Every tort involves conduct that the law considers wrong, but "punitive damages are proper only in the most exceptional cases." *Moriel,* 879 S.W.2d at 18.

The definition of malice required the jury to find that Burleson either intended to cause substantial injury to Byron *or* acted in a manner involving an extreme degree of risk. A corporation may be liable for exemplary damages if it acts maliciously through the actions of a corporate officer. *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921–922 (Tex. 1998). The record contains evidence that Mr. White, a bank employee, did act in a manner involving an extreme degree of risk by failing to explain the true nature and terms of the construction loan. As a loan officer, Mr. White understood the paperwork and the relative placement of risk of loss between the two parties, but never-

theless proceeded with the transaction with conscious indifference to the rights and welfare of Byron, Frank, and the Plunketts. Although Burleson admitted to making mistakes, no additional paperwork was offered to correct the placement of liability on Byron. Therefore, we conclude that there was evidence from which the jury could reasonably infer that Burleson acted maliciously causing financial injury to Byron. This meets the statutory prerequisite of malice for an award of exemplary damages. Thus, the trial court did not err in rendering judgment consistent with the jury's award of exemplary damages. Issues twenty-six and twenty-seven are overruled.

In issue twenty-nine, Burleson argues that the $50,000 punitive damage award to Byron is excessive in light of the factors enunciated in *Alamo. Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). The factors to consider in determining whether an award of exemplary damages is reasonable include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, (5) the extent to which such conduct offends a public sense of justice and propriety, and (6) the net worth of the defendant. *See Alamo,* 616 S.W.2d at 910 (the *Kraus* factors); *see also* TEX. CIV. PRAC. & REM.CODE § 41.011 (statutory adoption of the *Kraus* factors for trier of fact's consideration). A court of appeals confronted with a challenge to the factual sufficiency of an exemplary damages award must detail the relevant evidence explaining why the evidence supports or does not support the award in light of the *Kraus* factors. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994).

The amount of exemplary damages awarded against Byron was largely within the jury's discretion. Nonetheless, applying the factors listed above, the "nature of the wrong" and the "character of the con-

duct" favor imposition of exemplary damages. The evidence regarding the nature of the wrong and the character of the conduct involved have already been thoroughly discussed. Most importantly, Burleson demanded that Byron and his father pay $60,000, which technically should have extinguished the Plunkett's debt. Although Burleson acknowledged receipt of payment, as well as receipt of the accrued interest, it failed to return the original promissory note in question, as well as transfer to Byron his mechanics lien contract which was the only item of value securing any payment the Plunketts may have owed Byron pursuant to their construction agreement. Thus, Burleson was paid the full amount of the loan proceeds and generated revenue from accrued interest, while leaving Byron and Frank in an unsecured position that ultimately resulted in Byron losing the ability to enforce payment from the Plunketts.

Culpability for these actions can lie nowhere but with Burleson and its agents. The record clearly reflects that Burleson knew that it was structuring a loan where Byron was the borrower, but portrayed it as the Plunkett's loan. Regarding the situation and sensibilities of the parties concerned, Burleson was a prominent bank in the local community, whereas Byron was a small business owner. On the last factor, we are especially reluctant to substitute our sense of "a public sense of justice and propriety" for that of a jury of citizens drawn from a cross section of the community. We will only say that the facts of this case could be substantially offensive to a public sense of justice and propriety. We conclude that an exemplary damages award of $50,000 was supported by more than a scintilla of evidence and not so against the great weight and preponderance of the evidence as to be manifestly unjust. Issue twenty-nine is overruled.

### PUNITIVE DAMAGES—DUE PROCESS

Burleson argues in issue thirty one that the punitive damage award violates the due process clauses of the United States and the Texas Constitution. We have adequately addressed this issue in a prior opinion. *See Prince,* 851 S.W.2d at 882–83. In *Prince,* we stated:

> Texas procedure for awarding exemplary damages tracks the common-law method that has been approved by the Supreme Court. Appellate courts in Texas have repeatedly approved the Texas procedure in the face of due-process challenges. Texas procedure for assessing exemplary damages involves properly instructing the jury regarding the circumstances under which exemplary damages may be awarded. If the jury finds under the applicable standards that exemplary damages should be awarded, it then sets the amount.

*Id.* (internal cites omitted). In Texas, both the trial and appellate courts review exemplary damage awards to determine if they are reasonably proportioned to actual damages. *Id.* As mentioned in the previous section, the Texas Supreme Court and the legislature have provided factors for the courts to use when conducting this evaluation. *Kraus,* 616 S.W.2d at 910; TEX. CIV. PRAC. & REM.CODE § 41.011.

Here, the jury was properly instructed that exemplary damages could be awarded as a penalty or punishment, and as an example to others. The instruction and the questions confined the jury's award to circumstances involving intentional, willful, or grossly negligent conduct. Thus, we conclude that these limitations on the jury's discretion to award exemplary damages comply with federal due-process standards.

Jury instructions alone can satisfy the due process requirement under the Texas Constitution. *Prince,* 851 S.W.2d at 882–83. The procedural safeguards discussed above comply with due-course-of-law guarantees in the Texas constitution. Accordingly, issue thirty one is overruled.

MOTION FOR NEW TRIAL

 In issue thirty-four, Burleson argues that the trial court abused its discretion in overruling its motion for a new trial based on newly discovered evidence which shows that contrary to what Byron and Frank told the jury, Frank did indeed apply for the construction loan. Burleson contends that it has satisfied the four elements necessary to obtain a new trial based on new evidence as set forth in *Jackson*. A party seeking a new trial on the ground of newly discovered evidence must show the trial court that: (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983).

 Whether to grant such a motion is within the sound discretion of the trial court, and the trial court's action will not be disturbed on appeal absent an abuse of such discretion. *Id.* In considering the motion, the trial court considers the weight and the importance of the new evidence and its bearing in connection with the evidence received at trial. *Id.* "The inquiry [is] not whether, upon the evidence in the record, it apparently might have been proper to grant the application in the particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest abuse of judicial discretion." *Id.* Every reasonable presumption will be made on review in favor of orders of the trial court refusing new trials. *Id.*

Having reviewed the factors set forth in *Jackson*, we conclude that, under the facts of this case, the refusal to grant the new trial did not "involve the violation of a clear legal right or a manifest abuse of judicial discretion." Although the credit application was not found in Burleson's files until after the jury returned its verdict, Burleson failed to show that it was diligent in attempting to locate the applica-

tion before trial. Even if we disregarded this factor, there is nothing in the record which shows that the credit application would have produced a different result. Frank and Byron said that they signed all of the loan documents without reading them. In our view, the credit application is merely cumulative of the evidence produced at trial and tends only to impeach Frank and Byron's testimony. Contrary to Burleson's argument, the fact that the credit application's relevance was not apparent until Byron and Frank denied that they had submitted it is not pertinent to this inquiry. Accordingly, we conclude that Burleson has not shown the trial court abused its discretion in refusing a new trial on the basis of the alleged new evidence produced by them in their motion for new trial. Issue thirty-four is overruled.

CONCLUSION

Accordingly, we reverse the trial court judgment and render that Frank take nothing. We modify the trial court judgment awarding damages by reforming the judgment to $62,500 for Byron. In all other respects, we affirm the trial court judgment.

Justice VANCE concurring.

BILL VANCE, Justice, concurring.

I concur in the result. I write to request that the Supreme Court clarify the standard of review for legal sufficiency issues.

At least since *Garza v. Alviar*, the Court has more or less consistently stated the rule for review of legal sufficiency challenges in ordinary cases as follows: "In deciding that question, the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary." *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Apparently, the bad-faith litigation has caused the standard to become muddled. *See, e.g.,*

*Provident American Ins. Co. v. Castaneda,* 988 S.W.2d 189, 205–07 (Tex.1998) (Gonzalez, J., dissenting). The intermediate courts of appeals need to know when to apply the traditional *Garza* enunciation of the rule and when to apply the version of the standard requiring consideration of "all the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor," as the majority does in this case, citing *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998), which is a bad-faith case.