Motion for Rehearing Overruled; Opinion
filed January 6, 2011, Withdrawn; Affirmed in part, Reversed and Rendered in
part, and Substitute Memorandum Opinion filed March 17, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00721-CV



Windsor
Village, Ltd and Jackob Elbaz,
Appellants 

v.

Stewart Title
Insurance Company, Appellee 



On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 2004-61843



 

SUBSTITUTE MEMORANDUM OPINION


We overrule the motion for rehearing, withdraw our
opinion dated January 6, 2011, and issue the following substitute opinion.  Appellants,
Windsor Village, Ltd. and Jackob Elbaz, appeal from the trial court’s judgment
awarding damages and attorney’s fees to appellee, Stewart Title Company, on its
claims for fraud and indemnity.  We affirm, in part, and reverse and render, in
part.

Background

            A
fire broke out on November 20, 2002, in a condominium in the Villages of
Fondren Southwest Condominium project, damaging common areas and several units. 
Ritchmond Construction, Inc. contracted with the Villages of Fondren Southwest
Owners Association, Inc. (the “Association”) to repair the damage.  When Ritchmond
was not paid for all the work performed, it filed, on October 29, 2004, a
mechanic’s and materialmen’s lien on the Villages of Fondren and an original
petition against the Association, seeking to enforce a statutory and
constitutional lien (the “Ritchmond” lien).  In September 2004, prior to
Ritchmond’s filing its lien and its suit to enforce the lien, Windsor purchased
a majority of the units at the Villages of Fondren from Fatima Investments,
Inc.  

            In
April 2006, Windsor sold the units it had purchased from Fatima and additional units
it had acquired in foreclosure proceedings to Antonio Vallado.  Stewart Title
handled the closing and issued a policy of title insurance to Vallado.  As part
of the closing, Elbaz signed an Affidavit of Debts and Liens (the “Affidavit”) in
February 2006.  The affidavit did not disclose Ritchmond’s lien on the Villages
of Fondren.  

            Ritchmond’s
attorney later notified Stewart Title that a lien had been filed on the
Villages of Fondren, and the lien obligation on the units Vallado purchased had
not been satisfied prior to the closing.  Stewart Title paid Ritchmond $55,000,
obtained a release of all claims against the units purchased by Vallado, and
entered a subrogation and joint representation agreement with Ritchmond.

            On
January 22, 2007, Stewart Title filed a petition in intervention in the case
pending between Ritchmond and the Association, seeking damages in the amount of
$55,000 on claims against appellants for fraud for failing to disclose the
Ritchmond lien and indemnity.  Stewart Title also asserted claims against
appellants as the partial assignee of Ritchmond’s claims in the case that was
pending between Ritchmond and the Association.[1] 
Stewart Title subsequently supplemented its petition with claims for statutory
fraud, negligent misrepresentation, and conspiracy.  Ritchmond and the
Association settled the portion of the lien claim not covered by the release as
to the units purchased by Vallado.  Therefore, all of Ritchmond’s claims were
settled before trial, leaving appellants and Stewart Title as the only
remaining parties.  

            After
a bench trial, the trial court awarded Stewart Title damages for fraud and
indemnity in the amount of $55,000 and attorney’s fees against appellants
jointly and severally.  In four issues, appellants seek to reverse the judgment
of the trial court.  

Standard of Review

            Findings
of fact entered in a case tried to the court are entitled to the same force and
dignity as a jury’s verdict on jury questions.  Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994).  We apply the same standards in reviewing the
legal and factual sufficiency of the evidence supporting the trial court’s fact
findings as we do when reviewing the legal and factual sufficiency of the
evidence supporting a jury’s answer to a jury question.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996) (per curiam).  

            In
reviewing the legal sufficiency of the evidence, we view the evidence in the
light favorable to the fact finding, crediting favorable evidence if reasonable
persons could, and disregarding contrary evidence unless reasonable persons
could not.  City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). 
We may not sustain a legal sufficiency, or “no evidence” point unless the
record demonstrates: (1) a complete absence of a vital fact; (2) the court is
barred by the rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence to prove a vital fact
is no more than a scintilla; or (4) the evidence established conclusively the
opposite of the vital fact.  Id. at 810.  

            To
evaluate the factual sufficiency of the evidence to support a finding, we
consider all the evidence and will set aside the finding only if the evidence
supporting the finding is so weak or so against the overwhelming weight of the
evidence that the finding is clearly wrong and unjust.  Maritime Overseas
Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998); Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986) (per curiam).  

We review the trial court’s conclusions of law de
novo.  Busch v. Hudson & Keyse, LLC, 312 S.W.3d 294, 299 (Tex.
App.—Houston [14th Dist.] 2010, no pet.).  We review conclusions of law to
determine whether the conclusions drawn from the facts are correct.  Zagorski
v. Zagorski, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied) (op. on reh’g).  Even if we determine that the trial court made an
erroneous conclusion of law, we will not reverse if the trial court rendered
the proper judgment.  Busch, 312 S.W.3d at 299.  We uphold conclusions
of law if the judgment can be sustained on any legal theory supported by the
evidence.  Id.  

Analysis

Validity of
Ritchmond’s Lien

In their first issue, appellants contend that
Ritchmond’s statutory lien is not valid because it does not meet the
requirements of the Texas Property Code.  Therefore, according to appellants,
in the absence of a valid lien, Stewart Title’s causes of action are negated. 
The validity of the lien is not relevant to these proceedings between
appellants and Stewart Title.  Instead, the issue is whether appellants failed
to disclose the existence of the Ritchmond lien to Stewart Title.  Cf. Scott
v. Sebree, 986 S.W.2d 364, 371 (Tex. App.—Austin 1999, pet. denied)
(rejecting lessor’s argument that no fraud had occurred regarding failure to
disclose liens because debts secured by liens had already been paid in full and
would not hinder closing where lessor had affirmed in lease agreement with
option to purchase that property was free of liens and was required to keep
property free of liens during term of lease).  Appellant’s first issue is
overruled.  

Common Law Fraud

In their second issue, appellants argue that the
Affidavit is not relevant to the Ritchmond lien because the lien was not
created during the time Windsor owned any of the units of Villages of Fondren. 
We disagree.  A review of the Affidavit reveals that its scope is not limited
to the existence of liens created during Windsor’s ownership of its units at
the Villages of Fondren.  Rather, appellants represented that “there are . . .
[t]o the best of Seller’s knowledge, no loans or liens (including federal or
state liens and judgment liens) of any kind on such property during Seller’s
ownership.”  

Appellants further contend that the Affidavit does
not constitute a failure to disclose the Ritchmond lien to Stewart Title.  The
trial court awarded Stewart Title damages for fraud based on appellants’
failure to disclose the Ritchmond lien.

The elements of common fraud are (1) a material
representation was made; (2) the representation was false; (3) when the speaker
made the representation, he knew it was false or made it recklessly without
knowledge of the truth as a positive assertion; (4) the speaker made it with
the intention that it should be acted upon by the party; (5) the party acted in
reliance upon it; and (6) the party thereby suffered injury.  Aquaplex, Inc.
v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). 


To establish fraud by omission, the plaintiff must
prove that (1) the defendant failed to disclose the facts to the plaintiff; (2)
the defendant had a duty to disclose those facts; (3) the facts were material;
(4) the defendant knew the plaintiff was ignorant of the facts and the
plaintiff did not have an equal opportunity to discover the facts; (5) the
defendant was deliberately silent when it had a duty to speak; (6) by failing
to disclose the facts, the defendant intended to induce the plaintiff to take
some action or refrain from acting; (7) the plaintiff relied on the defendant’s
nondisclosure; and (8) the plaintiff was injured as a result of acting without
that knowledge.  7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.,
245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)
(op. on reh’g).  Fraud by omission is a subcategory of fraud because the
omission or nondisclosure may be as misleading as a positive misrepresentation
of fact where a party has a duty to disclose.  Four Bros. Boat Works, Inc.
v. Tesoro Petroleum Cos., 217 S.W.3d 653, 670 (Tex. App.—Houston [14th
Dist.] 2006, pet. denied).  

In the Affidavit, appellants failed to disclose the
existence of the Ritchmond lien that was pending against the property.  By
providing a sworn affidavit, appellants had a duty to disclose the existence of
the Ritchmond lien.  Lynn Babineaux, the closer for Stewart Title, testified
that Stewart Title requires an affidavit of debts and liens to disclose
anything that has not been recorded or that has not been shown on the title
commitment.  Babineaux further testified that she would not have closed without
the Affidavit and, if she had known about the Ritchmond lien, she would have
required that the lien be paid and released prior to closing or that funds to
pay the lien be escrowed.  Moreover, appellants stated in the Affidavit that
“I/we realize that . . . the title company in this transaction [is] is relying
on the representations contained herein.”  

Appellants knew of the existence of the Ritchmond
lien.  Jason Ritchmond testified that from October 2004, when Ritchmond filed
its lien and its suit to enforce its lien, to April 2006, he had discussions
with Elbaz, who was acting as representative for the Association, concerning
the Ritchmond lien.  Jason Ritchmond and his attorney met with Elbaz and
appellants’ attorney, Lana Dieringer, in April 2006, to try to reach a
settlement regarding the Ritchmond lien.  

Appellants knew that Stewart Title did not know about
the existence of the Ritchmond lien.  The title commitment issued by Steward
Title did not show the Ritchmond lien.  Babineaux testified that the title
commitment is issued to the seller, as well as the buyer, so that the seller
will “clear up any items that are outstanding against the property.” 
Appellants had actual knowledge of the Ritchmond lien, while Stewart Title had
only constructive knowledge of that lien.[2] 
The trial court could reasonably have inferred from the evidence that
appellants deliberately remained silent about the Ritchmond lien and intended
to induce Stewart Title to issue the title policy without the lien having been
paid and released.  

As a result of appellants’ failure to disclose the
Ritchmond lien, Stewart Title paid $55,000 to have the lien released as to the
units purchased by Vallado.  Victor Davis of Stewart Title testified that
Stewart Title had an obligation to pay the lien because it had issued a title
policy to Vallado.  Davis further testified that Ritchmond’s attorney stated
that Ritchmond was going to sue the record title holder—Vallado, and Stewart
Title would have been required to defend the lawsuit under the Title policy.[3]  We hold
that Stewart Title proved each element to establish its claim for common
fraud.  Appellants’ second issue is overruled.

Proof of Damages

In their third issue, appellants assert that Stewart
Title did not present proof of the $55,000 in damages it sought.  This
contention is without merit.  As explained above, Stewart Title would have been
obligated, under the policy issued to Vallado, to defend a lawsuit to enforce
the Ritchmond lien against Vallado.  Victor Davis testified that Stewart Title
paid Ritchmond $55,000 for the release of the lien on the units purchased by
Vallado.  Davis further explained that the alternative to paying Ritchmond the
$55,000 for the release of the lien was to become involved in litigation for
which attorney’s fees would exceed $55,000.  

Attorney’s
Fees

            Appellants
further contend that Stewart Title is not entitled to recover attorney’s fees.  Attorney’s
fees are not recoverable in Texas unless allowed by statute or by contract.  Dallas
Cent. Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992). 
Attorney’s fees are not recoverable on tort claims.  Metropolitan Life Ins.
Co. v. Haney, 987 S.W.2d 236, 243–44 (Tex. App.—Houston [14th Dist.] 1999,
pet. denied) (op. on reh’g).  Stewart Title pleaded for attorney’s fees in
connection with its claim for statutory fraud under Section 27.01 of the Texas
Business and Commerce Code.  See Tex. Bus. & Com. Code Ann. § 27.01
(West 2009).[4] 
Section 27.01(e) allows the defrauded party to recover reasonable and necessary
attorney’s fees.  Id. § 27.01(e). 

Section 27.01 applies only to misrepresentations of
material fact made to induce another to enter into a contract for the sale of
land or stock.  Marketic v. U.S. Bank Nat’l Ass’n, 436 F. Supp. 2d 842,
856 (N.D. Tex. 2006); Burleson State Bank v. Plunkett, 27 S.W.3d 605,
611 (Tex. App.—Waco 2000, pet. denied).  For fraud in a transaction to be
actionable under section 27.01, the contract must actually effect the
conveyance of real estate between the parties and cannot merely be tangentially
related or a means for facilitating a conveyance of real estate.  Evans v.
Wilkins, No. 14-00-00831-CV, 2001 WL 1340356, at *3 (Tex. App.—Houston
[14th Dist.] Nov. 1, 2001, no pet.) (not designated for publication).[5]  Here,
there is no contract between appellants and Stewart Title effectuating the
conveyance of any real estate.  Section 27.01 does not apply to claims
involving title insurance.  See Am. Title Ins. Co. v. Byrd, 384 S.W.2d
683, 685 (Tex. 1964) (holding predecessor statute to section 27.01 is not
applicable to contract for title insurance because “it was a transaction in
title insurance which was incidental to the transaction in real estate”); Satterwhite
v. Safeco Land Title of Tarrant, 853 S.W.2d 202, 205 (Tex. App.—Fort Worth
1993, writ denied) (holding section 27.01 does not apply to title insurance
transactions); Porter v. Irvine, 658 S.W.2d 711, 715 (Tex. App.—Houston
[1st Dist.] 1983, no writ) (noting “that the predecessor statute of § 27.01 was
strictly construed to apply only to real estate transactions and not to title
insurance, which was held to be merely incidental to the real estate
transaction”).  We hold that Stewart Title cannot recover attorney’s fees under
section 27.01.  In the absence of a statute or contract providing for the
recovery of attorney’s fees, Stewart Title is not entitle attorney’s fees.[6] 
Appellant’s third issue is sustained as to attorney’s fees.  

Mary Carter
Agreement

In their fourth issue, appellants argue that the
subrogation and joint representation agreement between Stewart Title and
Ritchmond is void because it is a Mary Carter agreement.  A Mary Carter
agreement exists when the settling defendant retains a financial stake in the
plaintiff’s recovery and remains a party at the trial of the case.  Elbaor
v. Smith, 845 S.W.2d 240, 247 (Tex. 1992).  Under this definition, a Mary
Carter agreement exists when the plaintiff enters into a settlement agreement
with one defendant and goes to trial against the remaining defendants.  Id. 
The settling defendant, who remains a party, guarantees the plaintiff a minimum
payment, which may be offset in whole or in part by an excess judgment
recovered at trial.  Id.  This creates an incentive for the settling
defendant to ensure that the plaintiff succeeds in obtaining a sizable
recovery, and thus motivates the defendant to assist in the plaintiff’s
presentation of the case.  Id.  Thus, Mary Carter agreements “‘present
to the jury a sham of adversity between the plaintiff and one co-defendant,
while these parties are actually allied for the purpose of securing a
substantial judgment for the plaintiff and, in some cases, exoneration for the
settling defendant.’”  Id. at 249 (quoting June F. Entman, Mary
Carter Agreements: An Assessment of Attempted Solutions, 38 U. Fla. L. Rev. 521, 574 (1986)).  

Whether the subrogation and joint representation
agreement is a Mary Carter agreement is not relevant here because this
proceeding was a bench trial, not a jury trial.  See id. (explaining
that Mary Carter agreements “distort the case presented before a jury”).  In
any event, the subrogation and joint representation agreement is not a Mary
Carter agreement because Ritchmond was no longer a party to the case after it
had settled with the Association, and only Stewart Title’s claims against
appellants were tried.  Appellant’s fourth issue is overruled.  

Conclusion

We reverse that portion of the judgment awarding
Stewart Title attorney’s fees and render judgment that it take nothing on its
claim for attorney’s fees.  We affirm the remainder of the judgment. 
Accordingly, the judgment of the trial court is affirmed, in part, and reversed
and rendered, in part.  

                                                                                    

                                                            /s/                    Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges,
Justice Jamison, and Senior Justice Hudson.*

 









[1]
Stewart Title also sued appellants’ attorney, Lana Dieringer, but subsequently
nonsuited its claims against her.





[2] Appellants contend that Stewart Title had knowledge of
other liens against the Villages of Fondren and, therefore, should have known
of the Ritchmond lien.  In support of this contention, appellants cite to “new”
evidence attached to their motion for new trial, which the trial court
overruled.  Appellants do not assert on appeal that the trial court erred in
overruling their motion for new trial.  Therefore, we will not consider those
documents.  





[3] Appellants contend that Elbaz cannot be held
individually liable because he signed the Affidavit as “Director of Dilan
Management Systems, Inc., Acting here in its Capacity as General Partner of Windsor
Village, LTD.”  To the contrary, Elbaz can be held liable for his own
fraudulent statements.  See Kingston v. Helm, 82 S.W.3d 755, 759 (Tex.
App.—Corpus Christi 2002, pet. denied) (“The law is well-settled that a
corporate agent can be held individually liable for fraudulent statements or
knowing misrepresentations even when they are made in the capacity of a
representative of the corporation.”); Shapolsky v. Brewton, 56 S.W.3d
120, 133 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), disapproved on
other grounds by Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d
777, 788–89 (Tex. 2005) (“It is the general rule in Texas that corporate agents
are individually liable for fraudulent or tortious acts committed while in the
service of their corporation.”).  That Elbaz was once removed from Windsor when
he signed the Affidavit does not shield him from liability for failing to
disclose the Ritchmond lien.  





[4] Section 27.01(a)(1) of the Texas
Business and Commerce Code, entitled “Fraud in Real Estate and Stock
Transactions,” provides:

(a) Fraud in a transaction
involving real estate or stock in a corporation or joint stock company consists
of a

            (1) false
representation of a past or existing material fact, when the false
representation is

            (A) made to a
person for the purpose of inducing that person to enter into a contract;  and

            (B) relied on by
that person in entering into that contract.

Tex. Bus. & Com. Code Ann.
§ 27.01(a).  





[5]
See also Burleson, 27 S.W.3d at 611 (“Because there was neither a
contract for, nor a sale of, land or stock between the parties involved in this
case, § 27.01 does not apply.”); Nolan v. Bettis, 577 S.W.2d 551, 556
(Tex. Civ. App.—Austin 1979, writ ref’d n.r.e.) (same).  





[6]
Stewart Title also sought attorney’s fees under the indemnity agreement
contained in the Affidavit.  Stewart Title asserted at oral argument that, even
if it cannot recover attorney’s fees under section 27.01, it may still recover
such fees under the indemnity agreement, and appellants have not challenged the
trial court’s finding that they agreed to indemnify Stewart Title on appeal. 
To the contrary, appellants agreed only to indemnify the “PURCHASERS AND/OR
LENDERS IN THIS TRANSACTION,” not the title company.  Moreover, we conclude
that appellants have challenged the trial court’s finding that they agreed to
indemnify Stewart Title in this appeal.  See Perry v. Cohen, 272 S.W.3d
585, 587 (Tex. 2008) (per curiam) (explaining that appellate briefs are to be
construed liberally). 





*
Senior Justice J. Harvey Hudson sitting by assignment.